# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SAMUEL HOWARD,

               Plaintiff,

   v.

RENEE BAKER, *et al.*,

            Defendants.

3:13-cv-00163-MMD-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

     This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#36), plaintiff's opposition (#43), and defendants' reply (#47).  Also before the court is plaintiff's cross-motion for summary judgment (#42) and defendants' opposition (#44).  Having thoroughly reviewed the record and all papers, the court recommends that defendants' motion (#36) be granted, and plaintiff's motion (#42) be denied.

## I.   FACTUAL BACKGROUND

     Plaintiff Samuel Howard ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC").  Presently, plaintiff is incarcerated at Ely State Prison ("ESP") in Ely, Nevada.  Acting *pro se*, plaintiff asserts civil rights claims against the following ESP and NDOC officials (collectively, "defendants"): ESP Warden Renee Baker ("Baker"); NDOC Deputy Director E.K. McDaniel ("McDaniel"); NDOC Medical Director Dr. R. Bruce Bannister ("Bannister"); ESP Medical Director Dr. Michael Koehn ("Koehn"); and ESP Nurse Kim Brewer ("Brewer").  All defendants other than Brewer are presently employed at the NDOC or ESP.

In his Complaint, plaintiff, who is diabetic, asserts four counts against defendants.  Counts I and II proceed under 42 U.S.C. § 1983.  First, plaintiff alleges that defendants were deliberately indifferent to his medical needs, in violation of the Eighth Amendment, through misadministration of insulin and subsequent refusal to allow his examination by a diabetic specialist.  (#8 at 4-9). Second, plaintiff alleges that defendants retaliated against him in violation of the First Amendment by refusing his requests to see a diabetic specialist and also by "taking his property."  (*Id*. at 10). Plaintiff contends that the actions were retaliatory because he had participated in certain legal proceedings and/or investigations at ESP in the years preceding this action.  (*Id*.).  In Count III, a civil rights claim under 42 U.S.C. § 1985(3),[1] plaintiff contends that defendants conspired when violating his Eighth and Fourteenth Amendment rights, as above described.  (*Id*. at 11).  Finally, plaintiff asserts a supplemental state tort claim for intentional inflection of emotional distress ("IIED"), which occurred as a result of defendants' various actions or inactions.  (*Id*. at 12).

These claims principally arise from an insulin administration error that occurred in October 2012.   However, this is not the first occasion upon which plaintiff has sued for insulin maladministration at ESP.  Plaintiff complained of repeated insulin maladministration by various ESP officials, none of whom are parties in the present litigation, in a federal civil rights action filed in this District in 2011.  *See Howard v. Cool*, 3:11-cv-00291-LRH-WGC (D. Nev. Oct. 18, 2011). The parties settled that dispute through the District of Nevada's early inmate mediation program. Their settlement agreement provided, in pertinent part, that the NDOC would arrange for review of plaintiff's insulin dosage, and also that "the NDOC, medical division, commits to provide Howard with the correct dosage of insulin, as prescribed and confirmed by Dr. Gedney."  (#36, Exh. A).

---

[1] The Complaint does not specify the particular subsection of § 1985 under which plaintiff brings his claim.  However, it appears that only the first clause of subsection (3) is applicable in this case.  *See Kush v. Rutledge*, 460 U.S. 719, 724-25 (1983) (describing the "five broad classes of conspiratorial activity" contained within the statute).

McDaniel, in his role as NDOC Deputy Director, signed the settlement agreement and also ensured Gedney's review of plaintiff's insulin dosage.  (*Id.*, Exh. L).

On October 15, 2012, plaintiff was administered an incorrect dose of insulin by Brewer, and plaintiff contends the incident was a violation of his Eighth Amendment rights.  In support of his deliberate indifference claims, plaintiff alleges that he received a vial of insulin that was clearly prescribed for a fellow ESP inmate, and that each defendant knew of the prior insulin administration errors.  Regarding defendants' knowledge of his medical needs, he contends that: Baker signed an institutional grievance in which she promised misadministration would not again occur (#8 at 5); McDaniel signed off on the settlement agreement in the prior action, which "assur[ed] the same overdose of insulin would never occur again" (*id.* at 6); Bannister received numerous requests from plaintiff regarding the overdoses, but he never attempted to investigate (*id.*); Koehn was aware of the overdoses and promised to speak to the nurses, but failed to do so (*id.*); and Brewer incorrectly administered the insulin, even though the vial was plainly identified for delivery to a different inmate (*id.* at 7).  In addition, plaintiff avers that defendants refused to allow a diabetic specialist to examine him following the October 15 incident.  (*Id.* at 8).  As a result of these actions, plaintiff alleges that he experienced "excruciating" abdominal pain in the following weeks, about which he complained on five different dates between October 22 and December 3, and that the maladministration caused him nerve damage.  (*Id.*).

With respect to his First Amendment retaliation claim, plaintiff claims, with scant detail, that defendants discussed his complaints and participation in an investigation at ESP by the American Civil Liberties Union ("ACLU"), and for that reason, they denied his requests to see a diabetic specialist and also took his property.[2]  (*Id.*).  His conspiracy claim is supported by the additional, but

---

[2] The Complaint does not specify what particular property defendants allegedly took, although plaintiff later clarifies this

bare, allegation that defendants discussed his medical needs and thereafter conspired against him. (*Id*. at 11).  Finally, he states the alleged events caused him extreme emotional distress.  (*Id*. at 12).

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unneeded trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record discovered by the parties demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).  A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.  *Id.*  Therefore, conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth.  *See Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps.  Where the parties file cross-motions for summary judgment, the court considers each party's evidence in separate determinations, *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011), as the required showings for the parties vary by the ultimate burden of proof.  When the moving party bears the burden of proof at trial, it must support its motion "with evidence which would entitle it to a directed verdict if the

in his own motion for summary judgment. *See infra*.

evidence went uncontroverted at trial." *C.A.R. Transp.  Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation omitted).  By contrast, a moving party who does not bear the burden of proof "need only prove that there is an absence of evidence to support the non-moving party's case[,]" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).   Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one."  *In re Oracle Corp.*, 627 F.3d at 387 (internal citation omitted).  "The non-moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute that requires a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Orr*, 285 F.3d at 783.

### III.   DISCUSSION

**A.   Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and is "merely . . . the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under § 1983 require the plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official who acts under the color of state law.  *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

In addition to these claim-specific burdens, incarcerated plaintiffs are subject to an exhaustion requirement for claims brought under federal law.  Under the Prisoner Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[A]pplicable procedural rules [for exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Administrative remedies provided by such grievance procedures "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter*, 534 U.S. at 524.  PLRA exhaustion requires that prisoners take "all

steps the [state] agency holds out . . . ."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  The PLRA "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-91.  Inmate plaintiffs are required to exhaust only "available" remedies, and a remedy is available when, as a practical matter, it is capable of use.  *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005).  Failure to exhaust is an affirmative defense under the PLRA; therefore, the defendant bears the burden at the summary judgment stage of proving that the inmate plaintiff has not exhausted his available administrative remedies.  *Jones*, 549 U.S. at 216.

**B.      Eighth Amendment Deliberate Indifference Claims**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting imposition of cruel and unusual punishment by state actors.  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  The Constitution's stricture on the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners.  *Id.* at 104.  It is well-settled law that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Id.* at 105.

In the Ninth Circuit, deliberate indifference claims are analyzed under a two-part test.  "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show . . . . an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."  *Colwell*, 763 F.3d at 1066 (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)) (internal citations and quotation marks omitted).  The objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain.  *Jett v. Penner*, 439 F.3d 1090, 1096 (9th Cir. 2006).

Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities' or the existence of chronic and substantial pain."  *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).

The subjective element considers the defendant's state of mind and whether the plaintiff was harmed.  Only where a prison "official 'knows of and disregards an excessive risk to inmate health and safety'" is the subjective element of the test satisfied.  *Id*. (quoting *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004)).  The conduct must consist of "more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Not only must the defendant prison official have actual knowledge from which he or she can infer that a substantial risk of harm exists, but he or she must also draw that inference."  *Id.* at 837.  The standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other[,]" *id.* at 836, and does not include "accidental or unintentional failures to provide adequate medical care . . . ," *Estelle*, 429 U.S. at 105. Finally, the plaintiff must prove that he was harmed by the indifferent actions, though the harm need not be substantial.  *Jett*, 439 F.3d at 1096.

In addition, the plaintiff must show that each defendant "'through the official's own individual actions[] has violated the Constitution'" for deliberate indifference liability to arise.  *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Prison supervisors are not vicariously liable for the deliberate indifference of subordinates under § 1983.  *Id.*   Yet a supervisor's own actions or inactions in training, supervising, or controlling subordinates may be independently culpable conduct from which liability can arise.  *Id.* at 1205-07. Accordingly, that a subordinate made an unintentional error does not preclude a supervisor's liability for the harm.  The supervisor may be liable when his actions or inactions proximately cause the

injury suffered by the plaintiff—that is, his acts or omissions set into motion the acts of subordinates, or he fails to terminate a subordinate's acts about which the supervisor knew or reasonably should have known. *Id.* at 1207-08 (citations omitted).

**1.    Plaintiff's Motion for Summary Judgment**

As a preliminary matter, the court is mindful that plaintiff proceeds in this action *pro se*, and also faces medical conditions that may hinder his ability to litigate effectively.  Accordingly, the court affords greater latitude to his pleadings and papers. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).  Nevertheless, after reviewing plaintiff's motion and the evidence offered in support thereof, the court has determined that his motion (#42) should be denied.  In short, the evidence does not establish an undisputed set of facts that entitles him to judgment as a matter of law. *Celotex*, 477 U.S. at 323; *Orr*, 285 F.3d at 773.

The evidence that plaintiff submits is as follows:[3] a February 2013 letter acknowledging receipt by the Office of Civil Rights at the U.S. Department of Justice of an undescribed civil rights complaint (#41 at 8); an October 2007 letter to plaintiff from the ACLU regarding its investigation of medical care deficiencies at ESP (*id.* at 10); an October 2007 letter from plaintiff to defendant McDaniel, in which plaintiff stated that he would no longer assist the ACLU investigation (*id.* at 11); an April 2001 "inmate interview request" addressed to McDaniel regarding an insulin administration error (*id.* at 13); an article from *The Ely Times* broadly relating to medical care issues at ESP (*id.* at 15); a 2009 grievance, signed by defendant Baker, relating to insulin maladministration (*id.* at 17-19); and a declaration made by Lorraine Memory, a former nurse at ESP, in support of an unrelated case concerning inadequate medical care at ESP (*id.* at 21-33).

---

[3] Plaintiff attached the unauthenticated, supporting exhibits to docket 41 in error.  Because plaintiff proceeds *pro se* and, as discussed, the exhibits fail to establish plaintiff's entitlement to summary judgment, the court ignores plaintiff's failure to properly authenticate.

For several reasons, this evidence does not demonstrate that plaintiff is entitled to summary judgment against each defendant on his two deliberate indifference theories.  Although plaintiff has not offered specific evidence about his diabetic condition, such as a medical record, his diagnosis is undisputed.  Diabetes is a serious medical condition for Eighth Amendment purposes.  *Colwell*, 763 F.3d at 1066; *Rencher v. Nevada*, No. 2:11-cv-01040-MMD-CWH, 2012 WL 4963000, at *3 (D. Nev. Oct. 16, 2012) (citing *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) for the proposition that diabetes is a serious medical condition).  Accordingly, the court concludes that there is no genuine dispute as to the objective element of the test.

Plaintiff's evidence does not, however, indisputably establish the subjective element of the deliberate indifference test against any of the defendants.  Plaintiff's only evidence that speaks to the knowledge of the defendants is the 2001 interview request to McDaniel and the 2009 grievance signed by Baker.  Assuming *arguendo* that this evidence forecloses a reasonable jury from finding that Baker and McDaniel lacked knowledge of plaintiff's medical condition, and also that any subsequent failure to provide adequate diabetic care demonstrated sufficiently culpable conduct, plaintiff has introduced no evidence that establishes any harm or injury from the October 15, 2012 insulin administration error.  Although his papers articulate bare allegations of pain and nerve damage, plaintiff does not discuss—much less, provide—any evidence from which a reasonable jury could make a factual finding of injury.  Because plaintiff has not supported his allegations that Brewer, Koehn, and Bannister knew of his diabetic condition, summary judgment is not warranted against these defendants.  Further, plaintiff's failure to offer any evidence of injury or harm owing to the October 15 error precludes summary judgment against Baker and McDaniel.

As to deliberate indifference theory based upon defendants' purported failure to allow him access to a diabetic specialist, plaintiff has offered no evidence that establishes that he made such

requests, that such a decision placed him in an *unreasonable* risk of harm, or that he was harmed by defendants' decision.  Summary judgment is, therefore, unwarranted.  Moreover, as discussed below, plaintiff failed to grieve the issue.  Even if the claim had adequate evidentiary support, the PLRA independently defeats plaintiff's claims.  Accordingly, plaintiff's motion for summary judgment on the count I claims should be denied.

**2.      Defendants' Motion for Summary Judgment**

**a.        October 15, 2012 Insulin Administration**

Defendants, for different reasons, are entitled to summary judgment on plaintiff's Eighth Amendment claim relating to insulin maladministration.  As above explained, it is undisputed that plaintiff is diabetic, and diabetes is a serious medical need for the purpose of the Eighth Amendment. *Rencher*, 2012 WL 4963000, at *3.  Accordingly, there is no dispute of fact as to the objective element of plaintiff's indifference claims.  However, defendants have successfully demonstrated that plaintiff cannot establish the subjective element of the test.

As to Brewer, plaintiff alleges that she administered the wrong vial of insulin on October 15, 2012, and defendants do not dispute that the error occurred.  (#37, Exh. B).  Yet the only evidence regarding the cause of the maladministration is Brewer's affidavit, in which she states that the error was unintentional and owed to a distracting conversation she held with plaintiff while delivering the vial.  (*Id.*)  Plaintiff's opposition does not contest this explanation, and no other evidence suggests that the incident was anything but a mistake.  Taking this evidence in a light most favorable to plaintiff, no reasonable jury could find that Brewer's error amounted to deliberate indifference.  As indicative as it might be of a need for greater caution by ESP medical staff, better training by relevant NDOC authorities, and a renewed, genuine commitment by ESP officials to providing

inmates a higher quality of medical care, simple medical mistakes are not Eighth Amendment violations. *Estelle*, 429 U.S. at 105.

Plaintiff was also unharmed by Brewer's error.  Shortly after realizing her mistake, both Brewer and Koehn took quick action to ensure plaintiff was monitored and received further care to prevent or reduce any harm from the mistake.  (#37, Exhs. B, F).  The medical evidence submitted by defendants shows that plaintiff was not harmed a result of the excess dose.  (*Id*. Exhs. C-F). Although plaintiff's papers baldly allege that the error "put plaintiff at risk [of] death" (#43), that he "suffered excruciating pain," and that his blood sugar was "dangerously low" (#42), the only evidence before the court are the sworn affidavits of Brewer and Koehn, each of whom state that plaintiff indicated he felt fine during post-incident monitoring, and also the medical records that show no deterioration in plaintiff's health.  (*Id*. Exhs. B, F).  Plaintiff does not contend that these statements are false or that his medical files are fraudulent.  Therefore, as no reasonable jury can find from the evidence that Brewer acted with a culpable state of mind or that plaintiff was harmed, plaintiff will be unable to establish the subjective element against Brewer.  *Jett*, 439 F.3d at 1096. Brewer is accordingly entitled to summary judgment.

Koehn was not indifferent to plaintiff's medical needs, but only because plaintiff suffered no harm.  Plaintiff alleges that Koehn was aware of the prior insulin overdoses and promised to speak to the nurses about their errors.  (#8 at 6).  Plaintiff further contends that Koehn failed to do so.  (*Id*.). Defendants argue that Koehn's lack of knowledge of the settlement agreement and lack of responsibility for medication administration and supervision of the nurses (*see* #37, Exhs. C, F, G) preclude deliberate indifference liability.  (*See* #36 at 12-13).  The argument is unpersuasive. Although no basis exists for finding liability against Koehn for his failure to supervise Brewer, *see Starr*, 652 F.3d at 1205-07, his affidavit does not foreclose the likelihood that he knew about the

prior, recurring insulin administration mistakes of the ESP nursing staff.  He may have lacked knowledge about the settlement agreement, but ignorance of the settlement does not entail lack of knowledge of the underlying incidents.  (*See* #37, Exh. F).  From Koehn's indication that his duties at ESP include evaluating the treatment for diabetic inmates, and that he has provided care to plaintiff and reviewed plaintiff's medical files on numerous occasions (*id.*), a reasonable jury could easily conclude that he knew of past medical errors that repeatedly placed one of his patients in harm's way—and, notwithstanding those errors, he did nothing.  The repeated errors could constitute an excessive risk that Koehn disregarded, and a reasonable jury could view his apparent failure to take action as beyond an ordinary lack of due care.  Nevertheless, Koehn is entitled to summary judgment because plaintiff suffered no harm from Brewer's error.   Absent any injury, the claim against Koehn necessarily fails.  *Jett*, 439 F.3d at 1096.

Like Koehn, the record demonstrates a genuine issue of material fact as to whether Bannister, Baker, and McDaniel had knowledge of the past errors.  Defendants contend that Baker lacked knowledge because she was not aware of the settlement agreement from the prior case.  (#36 at 11-12).  Yet plaintiff and defendants offered into the record a prison grievance in which plaintiff complained about an insulin administration error, and Baker's signature appears on the grievance.  (#41, Exh. E, #47, Exh. D).  Similarly, McDaniel signed the settlement agreement from the prior dispute; therefore, he likely had knowledge of the past errors.  (#36, Exh. A).  Bannister, in his role as NDOC Medical Director, reviewed and provided a second-level response to several of plaintiff's insulin-related grievances.  (*See, e.g.*, *id.*, Exh. I).  From this evidence, a reasonable jury could conclude that these three defendants knew of the ongoing errors in insulin administration.

Further, a jury could reasonably conclude that Baker, McDaniel, and Bannister did nothing to rectify the nursing staff's errors, and that such a failure rises to the level of deliberate indifference.

As the Ninth Circuit explained in *Starr*, inaction by supervisory officials may be independently culpable conduct that creates liability for deliberate indifference under § 1983.   Given that a reasonable jury could infer that each of these defendants possessed knowledge of the repeated past errors in the delivery of insulin to plaintiff, a jury could also could reasonably infer that subsequent, recurring mistakes—including Brewer's mistake on October 15, 2012—resulted from their failure to better train and supervise ESP medical staff, review and reform relevant policies, and commit greater resources to what appears to be an on-going problem.  *See Starr*, 652 F.3d at 1205-07.  The specific daily job tasks of each of these defendants does not preclude liability (*see* #36, Exhs. E, L; #37, Exh. G), for a jury could easily find they had an ability to do something by virtue of their senior-level positions at ESP and the NDOC.  Although the October 15, 2012 mistake is, perhaps, an "isolated exception" to defendants' overall treatment of plaintiff's diabetes, which "militates against a finding of deliberate indifference[,]"  *Jett*, 439 F.3d at 1096 (citation and internal quotation omitted), a reasonable jury could find in plaintiff's favor on part of the subjective element since their lack of knowledge of the mistakes has not been foreclosed.

Nevertheless, Baker, McDaniel, and Bannister deserve summary judgment because plaintiff's medical records establish that he was not harmed from the incident.  *See Jett*, 439 F.3d at 1096.  Defendants are encouraged to give immediate and energetic attention to these on-going deficiencies, for it is readily apparent that future mistakes may produce sufficient physical harm from which successful claims might arise.

**b.      Request for Examination by a Diabetic Specialist**

Defendants are also entitled to summary judgment on plaintiff's deliberate indifference theory regarding defendants' alleged failure to provide plaintiff access to a diabetic specialist. Under the PLRA, plaintiff must exhaust the NDOC grievance procedures, which entail multiple levels of

communication and official review.  42 U.S.C. § 1997e(a); (*see also* #36, Exh. O).  Defendants produced the sworn affidavit of Harold Byrne, ESP Associate Warden, who attested that a review of plaintiff's NDOC grievance file revealed no record of plaintiff's request for evaluation by a diabetic specialist.  (*Id.* Exh. P).  Plaintiff does not challenge this assertion, and he provides no specific information regarding his filing of medical kites that would have been prerequisites to such an examination.  (*See* #43).   Keeping in mind that plaintiff proceeds *pro se*, the court considers statements in his motion for summary judgment, which contend that he requested evaluation by a diabetic specialist "numerous times," and that any evidence of those requests must have been "shredded" if they do not appear in his files.[4]  (#42 at 6).   Plaintiff's suggestion of spoliation is vague and conclusory: he has provided no corroborating evidence or factual allegations regarding his alleged requests, such that a jury could find that he actually articulated the requests, that they were properly grieved, and that all related documents were destroyed.  Accordingly, evaluating the record in a light most favorable to plaintiff, there is no triable factual issue as to his failure to exhaust. Summary judgment is therefore appropriate.  *Jones*, 549 U.S. at 211.

**C.    First Amendment Retaliation Claims**

It is well-established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  An inmate's protection from retaliation for spoken complaints, prison grievances, and other constitutionally-protected speech activity arises under the First Amendment.  *See Rhodes*, 408 F.3d at 567 (quoting *Pell v. Procunier*, 417 U.S. 817,

---

[4] The court liberally construes this assertion.  Plaintiff's exact words were "medical files," and this suggests he believes such requests were contained in his Medical Kites.  Yet defendants produced his Kites from August 2012 through January 2014, and no request exists therein.  (#37, Exh. N).  In any case, his failure to exhaust is dispositive standing alone, as the PLRA looks only to the NDOC's grievance processes and not its medical request forms.  *See Jones*, 549 U.S. at 218 ("applicable procedural rules [for exhaustion] are defined not by the PLRA, but by the prison grievance process itself."); (#36, Exh. O).

822 (1974)).  A retaliation claim has five elements in the prison context: (1) a state actor committed an adverse action against the inmate; (2) because of; (3) the prisoner's protected First Amendment conduct, such as the grievance filing; (4) the state action chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal.  *Id.*

**1.      Plaintiff's Motion for Summary Judgment**

Plaintiff alleges that defendants' refusal to allow specialist evaluation following the October 15 maladministration of insulin, and also the taking of his property, which he identifies in his summary judgment motion as his watch, mattress, and radio (#42 at 4), were retaliatory actions in response to his filing a complaint with the Department of Justice and participating in a 2007 investigation by the ACLU into ESP's medical care.  (#8 at 10).  Plaintiff supports this claim with evidence of his participation in these matters.  (#41 at 8, 10-11).  As the court discusses below, however, plaintiff's claims of property deprivation are time barred, and he has not grieved the diabetic specialist request.  Defendants are entitled to summary judgment for his failure to exhaust, and his motion on this count, therefore, should be denied.

**2.      Defendants' Motion for Summary Judgment**

Defendants are entitled to summary judgment on plaintiff's retaliation claims.  As previously discussed, no evidence suggests that plaintiff requested examination or that plaintiff grieved an alleged refusal by defendants to allow such an examination.  Accordingly, no evidence exists from which a reasonable jury could find that defendants committed an adverse action against plaintiff, *see Rhodes*, 408 F.3d at 567, and the claim therefore fails.

Regarding plaintiff's claim of retaliation related to his property, defendants argue, in a supplemental brief ordered by the court, that the claims are time barred.  The property that defendants allegedly took from plaintiff pertains to various incidents that occurred in 2010 or earlier.

(#50 at 1-5; Exhs. A-F).   Even accepting as true plaintiff's theory that the property was taken for retaliatory reasons—which is not established by the grievance files submitted by defendants—plaintiff fully grieved the property allegations by May 2010.   (#50, Exh. D).   The statute of limitations for § 1983 claims in Nevada is two years, *Kindford v. Bannister*, 913 F. Supp. 2d. 1010, 1019 (D. Nev. 2012), and thus, the limitations period on those claims expired in May 2012.   Because plaintiff filed this action in March 2013, any claims related to the watch, air mattress, and radio are time barred.   Defendants are entitled to summary judgment on the retaliation claim related to the alleged taking of plaintiff's personal belongings.[5]

**D.     Conspiracy Claims Pursuant to § 1985**

42 U.S.C. § 1985(3) provides a federal cause of action against persons who have conspired to deprive a person of federally-protected rights.   A viable § 1985 claim requires a cognizable claim under § 1983.   *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 930 (9th Cir. 2004) (citing *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1980)).   Claims of conspiratorial activity under 42 U.S.C. § 1985 must have specific factual support to evidence the purported conspiracy.   *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).   The facts must show that the defendants had "an agreement or meeting of the minds" to violate the underlying constitutional or federal rights.   *Woodrum v. Woodward Cnty.*, 866 F.3d 1121, 1126 (9th Cir. 1989).   In addition, the plaintiff must specifically

---

[5] Defendants also argue that plaintiff did not state a claim for retaliation based on the taking of his property, and thus, this is a "new" claim. (#50 at 1). Defendants are incorrect. The court directs defendants' attention to paragraph three of count II (#8 at 10), which precisely states: "Defendants Renee Baker, Bruce Bannister, E.K. McDaniel, Michael Koehn, and Nurse Brewer retaliated against plaintiff after discussing plaintiff's complaint and lawsuit by not allowing plaintiff to be examined by a diabetic expert *and taking plaintiff's property*." (*Id.*) (emphasis added). The court appreciates that the screening order did not specifically identify the property issue (*see* #7 at 3-4), and, therefore, defendants' belief that plaintiff had not stated such a theory is not without basis. However, the screening order filed the retaliation claim in full (*see id.* at 4), and thereby included this claim—however brief and obscure it might have been. *See McDowell v. Rimington*, No. 3:12-cv-00249-MMD-WGC, 2013 WL 5316455, at *2 (D. Nev. Sept. 23, 2013) (explaining that courts should consider the viable theories articulated in the complaint, even where some of those theories are "not explicitly addressed in the screening order").

allege that the defendant's racial or class-based animus caused the conspiracy to deprive the plaintiff of equal protection under the law.  *Usher v. City of Los Angeles*, 828 F.3d 556, 561 (9th Cir. 1987); *Kush v. Rutledge*, 460 U.S. 719, 724-25 (1983).  For this reason, the statute is not an "open-ended federal tort law applicable 'to all tortious, conspiratorial interferences with the rights of others.'" *Kush*, 460 U.S. at 725 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971)).

**1.    Plaintiff's Motion for Summary Judgment**

Plaintiff's motion should be denied.  Plaintiff avers that defendants together conspired to "deprive plaintiff of his rights guaranteed by the Eighth and [First] Amendments . . . by the pattern of conduct stated herein . . . ."  (#8 at 11).  The court construes plaintiff's statement to allege conspiratorial activity as to the deliberate indifference claims and also the retaliation claims.  First, although he alleges that defendants discussed his medical condition and prior complaints, he has introduced no evidence of such a meeting, or any evidence that establishes beyond dispute that defendants had a conspiratorial meeting of the minds to violate his constitutional rights.  *Woodrum*, 866 F.3d at 1126.  Second, plaintiff has not established a predicate § 1983 violation from which a successful § 1985 claim can arise.  *Olsen*, 363 F.3d at 930.  Finally, plaintiff has introduce no evidence that any conspiracy—even assuming its existence—occurred as a result of defendants' class-based animus against him.  *Usher*, 828 F.3d at 561.  Plaintiff is not entitled to summary judgment due to these deficiencies.

**2.    Defendants' Motion for Summary Judgment**

Defendants are entitled to summary judgment on plaintiff's § 1985 claims.  First, plaintiff's complaint contains no allegation that defendants conspired against him on the basis of his membership in a protected class, a predicate requirement for liability under this section to arise.  Thus, no reasonable jury could find that defendants were motivated by class-based animus because

the record is entirely devoid of any facts supporting such a conclusion.  *Usher*, 828 F.3d at 561; *Kush*, 460 U.S. at 724-25.  Second, plaintiff makes only one fact-specific allegation in support of the conspiracy, namely, that defendants met to discuss his medical needs prior to entering the conspiracy.  (#8 at 11).  Plaintiff has produced no evidence regarding this speculative meeting and, in any case, this single allegation is not sufficient to establish the purported conspirators had a "meeting of the minds" to deprive him of his rights.  *Woodrum*, 866 F.3d at 1126.  Finally, plaintiff has failed to establish the underlying § 1983 violations, which thereby precludes a § 1985 claim. *Olsen*, 363 F.3d at 930.  Accordingly, summary judgment is proper.

**E.     Emotional Distress Claims**

Under Nevada law, a plaintiff must establish four elements to prove IIED: (1) severe or extreme emotional distress; (2) actually or proximately caused by; (3) the defendant's extreme and outrageous conduct; (4) committed with the intent or reckless disregard of causing the plaintiff's emotional distress.  *Huff v. N. Las Vegas Police Dep't*, No. 2:10-cv-01394-PMP-GWF, 2013 WL 6839421, at *11 (D. Nev. Dec. 23, 2013) (citing *Olivero v. Lowe*, 116 Nev. 395, 398-99 (2000)). "Extreme and outrageous conduct" are actions in which a defendant significant deviates from ordinary behavior—conduct that is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community."  *Shannon v. ReconTrust Co.*, No. 3:11-cv-908-RCJ-WGC, 2012 WL 1695664, at *5 (D. Nev. May 11, 2012) (quoting *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4 (1998)).  It is beyond "occasional acts that are definitely inconsiderate and unkind." *Maduike*, 114 Nev. at 4.  Whether the alleged conduct satisfies this standard is a question of law for the court to determine.  *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993).

1.       **Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment should be denied.   Plaintiff's motion contains no evidence that he suffered severe or extreme emotional distress.   Further, as discussed below, defendants are entitled to summary judgment because none of the conduct in this case was extreme or outrageous.

2.       **Defendants' Motion for Summary Judgment**

Plaintiff claims that defendants' "actions or inactions" caused him severe emotional distress. (#8 at 12).  The accusations are vague and conclusory, entirely devoid of factual detail and similarly lacking in evidentiary support at this stage.  The court understands plaintiff's IIED claims to embody the October 15 incident, and also the alleged failure of defendants to provide specialist evaluation thereafter.  In each instance, defendants are entitled to summary judgment because the conduct about which plaintiff complains is neither extreme nor outrageous as a matter of law.

With respect to Brewer, it is undisputed that she made a simple error on October 15. Although her mistake is unfortunate, it can hardly be characterized as "utterly intolerable in a civilized community."  *Shannon*, 2012 WL 1695664, at *5.  Defendants Baker, McDaniel, Koehn, and Bannister did not partake in administering plaintiff's insulin, and therefore, they engaged in no relevant action or inaction with respect to the incident, much less conduct that is extreme and outrageous.  Further, to the extent the latter defendants failed to intervene in the on-going nature of these mistakes, they constitute little more than occasional acts that are inconsiderate.  *Maduike*, 114 Nev. at 4.  Accordingly, defendants are entitled to summary judgment.

Finally, as the court previously described, the undisputed evidence establishes that plaintiff never made a request to see a diabetic specialist following the October 15 incident.  Rather than stating specific facts that illustrate a genuine dispute on this point, *Anderson*, 477 U.S. at 248;

*Celotex*, 477 U.S. at 324, plaintiff merely offers vague and conclusory accusations in his own summary judgment motion.  As it is not "outside all possible bounds of decency" to fail to provide a medical evaluation that was never requested, *see Shannon*, 2012 WL 1695664, at *5, plaintiff's IIED claims fail as a matter of law.

## VI.   CONCLUSION

Based upon the foregoing, the court concludes that, with respect to the claims in count I, the evidence establishes that defendants are entitled to judgment as a matter of law because plaintiff was unharmed by the October 15, 2012 insulin mistake, and plaintiff has failed to exhaust his administrative remedies regarding an insulin specialist examination.  With respect to counts II, plaintiff has not grieved the specialist examination issue, and therefore, cannot establish a retaliatory action.  In addition, the property issues are time-barred.  Plaintiff's claims in count III fail because plaintiff has not established predicate § 1983 violations, has produced no evidence of a conspiracy motivated by his membership in a protected class.  Finally, regarding count IV, the evidence demonstrates that defendants did not engage in extreme or outrageous conduct as a matter of law. Accordingly, on all counts, defendants are entitled to summary judgment.

The parties are advised:

1.        Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.        This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to for summary judgment (#36) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for summary judgment (#42) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.


**DATED:**   January 14, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**